# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LORIENINFA COUSINS,<br>　　　　　Appellant, | DOCKET NUMBER<br>NY-0432-22-0165-I-1 |
| 　　　　v. | |
| DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　　Agency. | DATE:  March 31, 2026 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Lorieninfa Cousins, Staten Island, New York, pro se.

Deirdre J. Payne, Esquire, and Jean Del Colliano, New York, New York, for the agency.

Dalia M. Garcia, Miami, Florida, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The agency has filed a petition for review of the initial decision, which reversed the appellant's chapter 43 performance-based demotion but denied her affirmative defenses.  Generally, we grant petitions such as this one only in the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED as to the basis on which the agency did not establish that the appellant's performance was unacceptable in the Quality performance goal, we AFFIRM the initial decision.

## BACKGROUND

Before the appellant's demotion, she worked as a GS-12 Immigration Services Officer (ISO) in the agency's Citizenship and Immigration Services Division at its New York Field Office. Initial Appeal File (IAF), Tab 5 at 4. As part of the appellant's ISO duties, she was responsible for adjudicating non-asylum related applications and petitions for immigration benefits, such as naturalization. Hearing Transcript, January 19, 2023 (HT 1/19/2023) at 55, 96 (testimony of the appellant's supervisor). Her duties included reviewing the applications, interviewing the applicants at scheduled interview times, issuing determinations approving or denying applications, or, if necessary, issuing continuances of applications and petitions. *Id.* at 55, 110-11 (testimony of the appellant's supervisor). Continuations were necessary when, for example, applicants needed to be reexamined because they did not appear for their

scheduled interviews, had criminal records that required verification, had national security or fraud concerns, or required a request for evidence. *Id.* (testimony of the appellant's supervisor); IAF, Tab 35 at 109. The appellant was also responsible for reporting case information and dispositions in agency systems and databases, including in "eSTAT." IAF, Tab 12 at 7.

In January 2021, M.L.S. became the appellant's first-level supervisor. IAF, Tab 7 at 53. From March through July 2021, the appellant's supervisor informed her via progress reviews and a mid-year performance review that her performance was unacceptable in the critical core competency of Customer Service and in the critical performance goal of Quality. IAF, Tabs 7-11. For the Customer Service competency, M.L.S. advised the appellant that she was not timely interviewing applicants at their scheduled interview times. *See, e.g.*, IAF, Tab 7 at 4-5. She instructed the appellant to "adhere to the interview calendar schedule as assigned" and to immediately report any issues that would prohibit or delay compliance. *Id.* at 5. For the Quality performance goal, M.L.S. advised the appellant that she was not accurately entering her case statuses in the agency's eSTAT database and was continuing more cases than she was deciding, which was adversely impacting the backlog of cases in the New York Field Office. *Id.* at 7. M.L.S. instructed the appellant, among other things, to "close out cases daily or in a timely manner," "close out 6 cases from her backlog every Friday," to report to M.L.S. the disposition of the cases assigned to the appellant by 4:00 p.m. each day, and to obtain approval from M.L.S. if a continuation was needed. *Id.* In her mid-year performance review, M.L.S. also indicated that the appellant "completed a total of 125 cases with an average of 25 cases monthly" and that "[t]he average of the team's completion is at 55." *Id.* at 53. According to the appellant, on July 30, 2021, she filed a formal equal employment opportunity (EEO) complaint against her supervisor. HT 1/19/2023 at 135 (testimony of the appellant).

On August 2, 2021, M.L.S. issued the appellant a 60-day performance improvement plan (PIP) based on unacceptable performance, citing the appellant's continued failure to timely adhere to the interview calendar schedule, to accurately enter case statuses in eSTAT, and to timely and accurately adjudicate and decide cases. IAF, Tab 12 at 4-9. The letter provided a list of requirements for the appellant to achieve expectations in the Customer Service competency and the Quality performance goal, which we discuss in more detail below. *Id.* at 5-7.

On October 13, 2021, the appellant received an unacceptable rating in both the Customer Service competency and the Quality performance goal on her 2021 end-of-year performance appraisal, resulting in an unacceptable final overall rating. IAF, Tab 17 at 4-8. On October 15, 2021, M.L.S. informed the appellant that she did not successfully complete the requirements of the PIP. *Id.* at 9.

According to the appellant, on or about March 11, 2022, the appellant disclosed to the Section Chief that she believed an applicant had an unresolved arrest and that he had been naturalized in error. IAF, Tab 56 at 5. On March 25, 2022, she sent a follow-up email to the Field Office Director and M.L.S., among others, inquiring if anything further needed to be done concerning her disclosure. *Id.*

On May 23, 2022, the Field Office Director proposed the appellant's demotion pursuant to 5 U.S.C. chapter 43 for unacceptable performance in the Customer Service core competency and the Quality performance goal. IAF, Tab 18 at 4-16. As for the Customer Service core competency, the agency alleged that the appellant failed to comply with her interview calendar schedule by calling applicants late on at least five occasions. *Id.* at 6. As for the Quality performance goal, the agency alleged that the appellant failed to accurately record her case statuses in eSTAT on two occasions, and failed to timely adjudicate four backlog cases, resulting in their reassignment. *Id.* at 9. On August 12, 2022, the

agency issued a decision demoting the appellant to a GS-7 Immigration Services Assistant, effective August 14, 2022. IAF, Tab 20 at 4-11, Tab 21 at 4.

The appellant appealed her demotion to the Board and raised affirmative defenses of whistleblower retaliation and retaliation for engaging in EEO activity. IAF, Tab 1 at 6. After holding the appellant's requested hearing, the administrative judge issued an initial decision reversing the appellant's demotion. IAF, Tab 1 at 2, Tab 71, Initial Decision (ID) at 1, 22. She concluded that the agency's Customer Service core competency was not valid, but that the Quality performance goal was valid—at least as to the eSTAT reporting component of that goal—because the agency had communicated to the appellant sufficient information regarding her performance requirements. ID at 7-15. She also found that the agency proffered substantial evidence as to the Quality performance goal to justify initiating the PIP. ID at 16. Nevertheless, she found that the appellant was not provided with a reasonable opportunity to demonstrate acceptable performance in the Quality performance goal. ID at 16-22. Lastly, the administrative judge found that appellant failed to prove her affirmative defense of whistleblower reprisal, and that the appellant did not preserve her affirmative defense of EEO reprisal. ID at 6 n.1, 22-24.

The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant has filed a response, and the agency has replied. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

To defend an action under chapter 43, the agency must prove by substantial evidence[2] that: (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's

---

[2] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p).

performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in her performance during the appraisal period and gave her an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15.

On review, the agency argues that the administrative judge did not examine its charge under the substantial evidence standard applicable to chapter 43 appeals. PFR File, Tab 1 at 15. We are not persuaded. As explained further below, the administrative judge properly cited to, and applied, the substantial evidence standard of review. ID at 6-7. She found that the agency proved elements one, two, and four. ID at 7, 15-16. As for the third element, i.e., the validity of the agency's performance standards, the administrative judge found that the agency proved that the Quality goal was valid at least as to the eSTAT reporting component of the goal but did not prove that the Customer Service competency was valid. ID at 7-15. As for the fifth element, the administrative judge found that the agency did not provide the appellant with a reasonable opportunity to improve her performance in the Quality goal. ID at 16-22. Therefore, she reversed the appellant's removal without addressing the remaining elements. ID at 22. Since the third and fifth elements are the crux of the arguments on review, our analysis will be similarly focused.

<u>We agree with the administrative judge's finding that the agency did not prove that the Customer Service competency was valid.</u>

As to the Customer Service competency, the administrative judge found that it was invalid because the agency did not explain to the appellant what was necessary to achieve a satisfactory rating in this competency. ID at 12. She reasoned that the number of minutes and times the appellant could acceptably be late to start an applicant interview was not clearly stated, but that it could be

inferred from the examples the agency provided in its pre-PIP progress reviews that 18 minutes was unacceptable.  ID at 9.  Yet, she later found that although the appellant's supervisor ultimately testified that "anything over 20 minutes late" was unacceptable, she did not testify that she informed the appellant of the 20-minute threshold and thus, did not notify her of the standard to be minimally successful.  ID at 12.

On review, the agency argues that the administrative judge erred by requiring a numerical benchmark of how many minutes and times the appellant could be late for an applicant appointment and still perform acceptably.  PFR File, Tab 1 at 10-11.  Nevertheless, it asserts that the appellant was on notice that "a failure to call applicant within 20 minutes of their scheduled appointment time on more than 2 or more occasions per interview period would be considered unreasonable."  *Id.* at 11 (grammar as in original).  The agency has not explained the meaning of the term "interview period."  We agree with the administrative judge's finding.

Performance standards should be specific enough to provide an employee with a firm benchmark toward which to aim her performance and must be sufficiently precise so as to invoke general consensus as to their meaning and content.  *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013), *modified on other grounds by Lee*, 2022 MSPB 11.  Performance standards are not valid if they do not set forth the minimum level of performance that an employee must achieve to avoid removal for unacceptable performance under chapter 43.  *Id.*  Here, the agency submitted the appellant's 2021 performance standards, which show that she was subject to a four-tier rating system in five critical core competencies and four critical performance goals.  IAF, Tab 6 at 5, 7.  However, those performance standards are, without more, invalid because they only define successful performance in general terms.  For example, the Customer Service core competency at issue in the appellant's PIP and demotion merely states, as relevant here, that the employee "achieve[s] expectations" if she

"responds to questions or requests from customers within reasonable timeframes." *Id.* at 5. Similarly, the Quality performance goal merely states, as relevant here, that the employee "achieve[s] expectations" if she "completes routine cases and work assignments," "ensur[es] that work assignments are completed in a timely manner and that any delays are due to good cause," and "completes and updates administrative reports, systems, and security reporting requirements." *Id.* at 7.

Nevertheless, an agency may cure otherwise fatal defects in the development and communication of performance standards by communicating sufficient information regarding performance requirements at the beginning of, and even during, the PIP. *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶ 18 (2001), *modified on other grounds by Lee*, 2022 MSPB 11. It also may modify, at the beginning of the employee's PIP, the quality and quantity of the performance required, as long as it does so according to a reasonable standard and makes the appellant aware of the modifications. *Id.*

Here, we agree with the administrative judge that the pre-PIP and PIP documents and communications provided to the appellant do not cure the defective Customer Service core competency. ID at 9-12. For example, the pre-PIP progress review notes merely instructed the appellant to "adhere to the interview calendar schedule as assigned." *E.g.*, IAF, Tab 7 at 5. The PIP notice required that the appellant review all application and petition files prior to the scheduled interview and "ensure that [she] began interviews at the scheduled appointment time for all applicants/petitioners that arrive on or before their scheduled interview appointment time." IAF, Tab 12 at 5.

At the hearing, the appellant's supervisor testified that the appellant was not required to be timely to interviews 100% of the time and that "anything after like 20 minutes I think would be considered unreasonable." HT 1/19/2023 at 134 (testimony of the appellant's supervisor). However, there is no agency guidance or written communication informing the appellant of this 20-minute threshold, and the appellant's supervisor did not otherwise testify that she told the appellant

of this 20-minute threshold. Thus, we agree with the administrative judge's finding that the agency did not cure the invalid Customer Service core competency. ID at 12.

On review, the agency argues that M.L.S. testified that she notified the appellant in person when she was failing to meet with an applicant within 20 minutes of their appointment time. PFR File, Tab 1 at 11-12. However, the testimony that the agency points to does not demonstrate that the appellant's supervisor told the appellant that being more than 20 minutes late for interviews was considered unacceptable while being less than 20 minutes late was sufficient to achieve expectations. *Id.* at 11-12; HT 1/19/2023 at 92, 113-14, 134 (testimony of the appellant's supervisor). Instead, it simply shows that the appellant's supervisor would go to the appellant's office or email her to inform her when an applicant had checked in and instruct her to call the applicant, which she testified she also did with the other ISOs. HT 1/19/2023 at 92-93, 113-14, 134-35 (testimony of the appellant's supervisor). For instance, she testified that "on the 15-minute mark . . . I'm doing my rounds with all of my officers to make sure that they have already taken their applicant." *Id.* at 134-35 (testimony of the appellant's supervisor).

The agency asserts that it was clear that being more than 20 minutes late on two or more occasions per interview period was unacceptable. PFR File, Tab 1 at 13. However, on review and in the proposed demotion, it lists examples on August 4, September 20, and October 5, 2021, where the appellant was only 13 and 17 minutes late in calling applicants and considered to be performing unacceptably. *Id.*; IAF, Tab 18 at 6. Thus, the agency has not shown that the administrative judge erred in finding that the agency did not clearly communicate this 20-minute benchmark to the appellant.

Lastly, it does not appear that the agency raised below that being late on more than two occasions during an interview period was unacceptable for the purpose of evaluating the appellant's timeliness in this competency. Therefore,

the administrative judge did not address this issue in her initial decision. The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016). The agency has not met its burden here. In any event, the agency has not provided an explanation or evidence regarding what constitutes an "interview period," and the appellant denies knowledge of what the agency considered an "interview period." PFR File, Tab 3 at 9. The agency cites the appellant's pre-PIP and PIP progress review notes to support its contention that the appellant was on notice that being late on more than two occasions during an interview period was unacceptable. PFR File, Tab 1 at 11. However, as already established, the notes themselves do not state that being late two or more times in any period is unacceptable, nor do they define or even refer to an "interview period." *E.g.*, IAF, Tab 11. Also, because the progress review periods varied in length, it is difficult to discern, without more, whether the appellant's timeliness was being evaluated on a daily, weekly, biweekly, or monthly basis. *Compare* IAF, Tab 7 at 57 (19-day period), *with id.* at 91 (5-day period). Thus, we discern no basis to disturb the administrative judge's conclusion that the agency did not establish that the Customer Service core competency was valid. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

<u>We modify the initial decision as to the basis on which the agency did not prove its charge of unacceptable performance with respect to the eSTAT component of its Quality performance goal.</u>

On review, the agency challenges the administrative judge's finding that it did not provide the appellant with an adequate opportunity to improve in the

Quality performance goal. PFR File, Tab 1 at 15-20; ID at 16-22. As established above, the performance standards at issue here, including the Quality performance goal, define successful performance in general terms. IAF, Tab 6 at 5, 7. The PIP augmented the Quality performance goal by listing 17 requirements or components that the appellant must perform to achieve expectations. IAF, Tab 12 at 6-7. There are two components to the Quality performance goal at issue in the appellant's demotion: (1) accurately and timely reporting case statuses in the eSTAT computer system; and (2) timely completing or adjudicating continued or backlog cases. IAF, Tab 18 at 9; Hearing Transcript, March 20, 2023 (HT 3/20/2023) at 12 (testimony of the deciding official). We modify the administrative judge's reasoning concerning the eSTAT component to find that the agency did not prove that the appellant's performance was unacceptable. We agree with the administrative judge that the agency did not provide the appellant with an adequate opportunity to improve regarding backlog cases.

We turn first to the agency's expectations regarding the eSTAT component. If an employee's performance is unacceptable in one or more, but not all, components of a critical element, the agency must show by substantial evidence that her performance warranted an unacceptable rating on the element as a whole. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 36 (2010). An important function of performance standards is to ensure that employees understand both their agencies' expectations of them and the consequences of their failure to meet these expectations. *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 628 (1984). The evidence presented by the agency thus should demonstrate that the appellant knew or should have known the significance of the component or components at issue, in addition to demonstrating that her deficiencies are significant enough to justify the action the agency has taken. *Id.* at 628-29. The evidence may include a showing of the importance of the

component or components in relation to the duties and responsibilities with which the critical element as a whole is concerned. *Id.* at 629.

Regarding the first component of accurately and timely reporting case statuses and dispositions in eSTAT, the administrative judge found that the agency provided the appellant sufficient information in the PIP about what she needed to do to achieve expectations. ID at 13-15. Specifically, she was informed that she needed to report case information and statuses into several agency systems and databases, including as relevant here, entering decision and continuation reasons in eSTAT, reporting the disposition of assigned cases by 4:00 p.m. each day, and submitting a weekly individual audit on the last workday of the week. ID at 15. The administrative judge also appears to have found that the agency established that the appellant did not demonstrate acceptable performance during the PIP based on progress reports demonstrating the appellant's late or missing eSTAT entries on several occasions, including the two instances listed in the proposed demotion. ID at 17; IAF, Tab 13 at 7, Tab 14 at 17, Tab 15 at 4, 37. Indeed, the appellant acknowledged that she made errors in her eSTAT entries during the PIP period. HT 3/20/2023 at 106 (testimony of the appellant). Unacceptable performance in only a single component of a critical job element can be sufficient to justify removal for unacceptable performance. *Wallace v. Department of the Air Force*, 879 F.2d 829, 834 (Fed. Cir. 1989). However, as noted above, the agency must demonstrate that the appellant knew or should have known the significance of this component to the element as a whole and that her deficiencies are significant enough to justify her demotion. *Shuman*, 23 M.S.P.R. at 628-29. Because the administrative judge did not address whether the agency met its burden, we do so here.

We find that the agency has not established that the appellant knew or should have known of the significance of this eSTAT component to the Quality performance goal as a whole and how many entry errors were significant enough to justify her demotion. The appellant's supervisor did not testify, nor did the

agency otherwise establish—in either the pre-PIP or PIP progress review notes and communications—that the appellant was explicitly informed of how many times she could fail to accurately update eSTAT and still achieve expectations, or that her failure to achieve expectations in the eSTAT component could result in her overall failure to achieve expectations in her Quality goal.

Moreover, the agency did not establish that the appellant should have known this information. The appellant's first-level supervisor testified that this component of the appellant's job was "[v]ery important" because it identifies the case disposition and is used by "[the] region or headquarters to capture what each officer does on a daily basis and . . . figure out how to adjust work assignments" and to determine continuation and "efficiency rates" for the entire office. HT 1/19/2023 at 89-90 (testimony of the appellant's supervisor). She further testified that, in addition to the appellant's eSTAT entries, she used the appellant's daily bundling sheets to obtain the information she needed about the appellant's daily case disposition. *Id.* at 156 (testimony of the appellant's supervisor). Based on the above and the fact that the appellant was also required to update several other agency systems/databases, submit daily case dispositions reports, and submit weekly audits containing similar case information, we cannot conclude that she should have known of the specific significance of her eSTAT entries to the Quality performance goal as a whole or that her deficiencies were significant enough to justify her demotion. To the extent that that administrative judge found that the agency established that the appellant did not demonstrate acceptable performance during the PIP as to the eSTAT component of the performance goal, we need not address that finding here. ID at 17.

Regarding the second component, the agency alleged in its proposed demotion that the appellant failed to "timely" adjudicate backlog cases and gave four examples. IAF, Tab 18 at 9. The administrative judge essentially found that the agency did not provide the appellant with sufficient information as to how much time was "timely" for purposes of achieving expectations. ID at 18-19, 20.

Specifically, the administrative judge essentially determined that the agency did not establish the minimally acceptable number of continued cases and time spent adjudicating those cases necessary for the appellant to achieve expectations. *Id.* On review, the agency does not specifically challenge this finding. We agree with the administrative judge's conclusion that the agency has not shown that the appellant was given a reasonable opportunity to demonstrate acceptable performance during the PIP. We rely on the agency's failure to establish that it cured this invalid component of its performance goal to support this finding, without reaching the agency's remaining arguments.

Here, the appellant was advised in her pre-PIP progress reviews and in her PIP that her performance in the Quality performance goal was unacceptable because she was continuing more cases than she was deciding, which adversely impacted the backlog of cases in the New York Field Office. *See, e.g.*, IAF, Tab 7 at 7, Tab 12 at 6. In the PIP, she was instructed, among other things, to complete assigned work "in a timely manner," to complete and close out cases from her backlog each Friday or "off-calendar" day "as directed by [her supervisor]," and to obtain approval from a supervisor for all cases that the appellant continued. IAF, Tab 12 at 6-7. She was also instructed to adjudicate backlog cases in order of the oldest case file interview date, unless otherwise instructed by her supervisor. *Id.* at 7. The PIP progress meeting notes show that on Fridays, or her "off-calendar" or "unscheduled" day, she was assigned to adjudicate anywhere from one to six cases from her "backlog" of continued cases. *See, e.g.*, IAF, Tab 13 at 5-7, Tab 14 at 15-17, 44-47, Tab 15 at 4, 35-37, 66-68, Tab 16 at 24-25, 64-65. We find that, without more, these communications do not inform the appellant of the minimally acceptable number of continued cases and time spent adjudicating a continued case for the appellant to achieve expectations.

In the proposed demotion, the agency listed four examples from the appellant's backlog of continued cases that she failed to "timely" complete and

that required reassignment to other employees. IAF, Tab 18 at 9. The PIP progress reports reflect that specific cases and specific priorities were given to the appellant each day and then replaced with a new list and priorities the next day. *E.g.*, IAF, Tab 13 at 5-6. According to the agency's proposed demotion, two of the backlog cases at issue in the demotion were assigned and reassigned to the appellant on specific days, presumably her off-calendar days, during a period spanning "over 120 days." IAF, Tab 18 at 9. Meanwhile, it appears that the remaining two backlog cases were assigned and reassigned to the appellant during shorter periods of approximately 36 and 28 days. *Id.* For the following reasons, we find that the agency has not established by substantial evidence that it cured this component of the performance goal during the PIP by providing the appellant with a benchmark of what constitutes "timely" completion of backlog cases and informing her at what point the age of a case goes from being minimally acceptable to unacceptable. ID at 18.

In the PIP progress reviews and the proposed demotion, the agency specifically identified backlog cases that were over 120 days from the interview date. *E.g.*, IAF, Tab 16 at 26, Tab 18 at 9. However, the agency has not explained below or on review the significance of 120 days and instead claimed below that cases that were over 90 days old were considered unacceptable. HT 3/20/2023 at 174. Meanwhile, there are also several examples in the record of the appellant's supervisor reassigning cases that the appellant had partially completed and were less than 45 days old. IAF, Tab 35 at 68, Tab 15 at 5. For instance, according to the PIP progress review notes ending on September 8, 2021, and an email from the appellant to her supervisor around that time, the appellant's supervisor reassigned 10 of the appellant's cases, which were between 15 and 43 days old from the interview date. *Id.* Thus, we cannot determine based on the agency's documentary evidence the minimally acceptable case age.

Significantly, in determining that the appellant's supervisor did not inform the appellant of what she needed to do to achieve expectations, the administrative

judge implicitly credited the appellant's testimony that she was not notified of the minimum number of cases that she needed to complete—as opposed to continue—each day, and what constituted "timely" completion of cases for purposes of achieving expectations. HT 3/20/2023 at 87-89 (testimony of the appellant); ID at 18, 20. This testimony is also corroborated by other documents in the record, such as the appellant's reply to the proposed demotion, in which she stated, "there are no numbers for completion in the [Performance Plan and Appraisal] goals issued to me in October of 2020." IAF, Tab 35 at 68, 109. Specifically, in her Fiscal Year 2021 Performance Plan and Appraisal, the appellant noted that she was, "concerned about the use of the word 'timely,' as it is scattered throughout the document, but remains without an operational definition. It is unclear what the standard is for 'timely,' whether decisions, services, etc." IAF, Tab 6 at 10. We find no reason not to defer to the administrative judge's decision to credit the appellant's testimony. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (recognizing that the Board must give "special deference" to an administrative judge's demeanor-based credibility findings, "[e]ven if demeanor is not explicitly discussed"). Therefore, for the reasons stated above, we affirm the administrative judge's determination that the appellant was not provided with a firm benchmark toward which to aim her performance. Accordingly, we agree that the agency did not show by substantial evidence that the PIP constituted a reasonable opportunity to demonstrate acceptable performance in the handling of backlog cases.

Absent valid performance standards, the Board cannot evaluate whether the appellant's performance was unacceptable. *See, e.g., Henderson v. National Aeronautics and Space Administration*, 116 M.S.P.R. 96, ¶ 9 (2011); *Ortiz v. Department of Justice*, 46 M.S.P.R. 692, 695 (1991); *Williams v. Department of Health and Human Services*, 30 M.S.P.R. 217, 220 (1986). Thus, because we find that the demotion cannot stand based on an invalid performance standard, we need not reach the parties' remaining arguments including whether the appellant's

supervisor took actions that deprived the appellant of a reasonable opportunity to improve or the remaining elements of the agency's case. PFR File, Tab 1 at 15-20, Tab 3 at 13-16, Tab 4 at 10-13.[3]

## NOTICE OF APPEAL RIGHTS[4]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain

---

[3] On review, the parties do not challenge the administrative judge's finding that the appellant failed to prove her affirmative defense of whistleblower reprisal, and we decline to revisit it. ID at 22-24. In the appellant's reply to the petition for review, she alleges that her supervisor began writing the progress review notes in retaliation for the appellant filing an EEO complaint. PFR File, Tab 3 at 6. The administrative judge determined that the appellant waived her affirmative defense of reprisal for EEO activity. ID at 6 n.1. We agree. In *Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶¶ 17-28, the Board considered the following non-exhaustive factors in determining whether an appellant waived an affirmative defense: (1) the thoroughness and clarity with which the appellant raised an affirmative defense; (2) the degree to which the appellant continued to pursue the affirmative defense in the proceedings below after initially raising it; (3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when specifically afforded an opportunity to object and the consequences of the failure were made clear; (4) whether the appellant raised the affirmative defense or the administrative judge's processing of the affirmative defense claim in the petition for review; (5) whether the appellant was represented during the course of the appeal before the administrative judge and on petition for review, and if not, the level of knowledge of Board proceedings possessed by the appellant; and (6) the likelihood that the presumptive abandonment of the affirmative defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board. After considering these factors, we agree with the administrative judge that the appellant waived this affirmative defense for the following reasons. The appellant alleged an affirmative defense of retaliation for her protected EEO activity in her initial appeal. IAF, Tab 1 at 6. After the initial status conference, the administrative judge issued an affirmative defense order, stating that during the conference the appellant had only raised an affirmative defense of whistleblower reprisal; thus, she only notified the appellant of her burden to establish that defense. IAF, Tab 28 at 3-5. She nevertheless set a deadline by which the appellant could raise any other affirmative defenses and warned her that her failure to do so would result in those defenses being waived; yet the appellant again did not raise a defense of retaliation for her EEO activity. *Id*. at 3. The administrative judge again allowed the appellant an opportunity to raise other affirmative defenses during the prehearing conference, and she did not. IAF, Tab 36 at 2-3. Although it appears the appellant attempted to raise the affirmative defense of EEO reprisal during the hearing and the administrative judge determined that she had

review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

waived that defense, she nevertheless did not challenge that finding by filing a cross-petition for review. HR 1/19/2023 at 135-36 (testimony of the appellant); ID at 6 n.1. Thus, we agree with the administrative judge that the appellant waived this affirmative defense.

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _____

                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.